UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| OLDFIELD CLUB, FOR ITSELF AND ON BEHALF OF ITS MEMBERS,<br><br>　　　　　　　　　　Plaintiff,<br><br>　v.<br><br>TI OLDFIELD DEVELOPMENT, LLC, AND TI OLDFIELD OPERATIONS, LLC, BY AND THROUGH THEIR RESPECTIVE BOARD OF DIRECTORS JOHN DOE 1-10, INDIVIDUALLY AND AS DIRECTORS BETWEEN THE TIME PERIODS 2010-2015 (PRE-TURNOVER); OLDFIELD HOLDINGS GA, LLC; PHILLIP GALBREATH; JAMIE D. SELBY, INDIVIDUALLY AND AS MANAGING MEMBER OF ELLIOT GROUP HOLDINGS, LLC; ELLIOT GROUP HOLDINGS, LLC,<br><br>　　　　　　　　　　Defendants. | CIVIL ACTION 9:17-CV-452-DCN<br><br>**AMENDED COMPLAINT**<br><br>**(Jury Trial Requested)** |

Plaintiff Oldfield Club, by and through the undersigned attorneys, submits this Complaint and alleges as set forth below.

**PARTIES**

1. Plaintiff Oldfield Club is a non-profit corporation organized under the laws of South Carolina and located in Beaufort County.

2. Defendants TI Oldfield Development, LLC, and TI Oldfield Operations, LLC, are limited liability companies formed and existing under the laws of the State of Georgia (collectively "TI"). These defendants are the successor entities to the original declarant for Oldfield, which was Oldfield, LLC.

3. Defendants John Doe 1-10 (hereinafter "John Doe Directors") are, upon information and belief, citizens and residents of various states, including the State of South Carolina and the State of Georgia, and were the individuals appointed by TI.

4. Defendant Oldfield Holdings GA, LLC, is a limited liability corporation formed and existing under the laws of the State of Georgia ("Oldfield Holdings"). Defendant Oldfield Holdings is an entity wholly owned by TI, and is included in the TI defendants.

5. Phillip Galbreath is, upon current information and belief, an individual who resides in Georgia. Galbreath was and is a member of the board of directors of Oldfield Club.

6. Defendant Jamie D. Selby ("Selby") is a citizen and resident of the State of South Carolina, and is the managing member of Defendant Elliot Group Holdings, LLC ("EGH"), a limited liability company formed and existing under the laws of the State of South Carolina.

## JURISDICTION AND VENUE

7. The Court of Common Pleas for South Carolina, County of Beaufort, has subject-matter jurisdiction over the claims in this lawsuit under article V § 11 of the South Carolina Constitution and, *inter alia*, South Carolina Code §§ 14-5-350 *et seq.* and 15-7-10 *et seq.*

8. The Court of Common Pleas for South Carolina, County of Beaufort, has personal jurisdiction over the parties because they reside and do business in Beaufort County.

9. Venue is proper in the Court of Common Pleas for South Carolina, County of Beaufort, under, *inter alia*, South Carolina Code § 15-7-30 *et seq.* because a substantial part of the events or omissions giving rise to the claim occurred in that court's division.

## BACKGROUND

10. Oldfield is a community located in Bluffton, South Carolina.

11. Oldfield Club is an organization provided for in the covenants at Oldfield. Oldfield Club operates recreational and social facilities at Oldfield, as provided in the covenants.

12. TI is the developer of Oldfield.

13. Selby was, at all relevant times, the general manager of Oldfield Club.

14. Selby is the sole owner of EGH, a South Carolina corporation formed by Selby to acquire the Greeters Store, a property at issue in this lawsuit.

15. As the developer, at all relevant times TI owed, and owes, a fiduciary duty to Oldfield Club and its members.

16. A contract called the Transfer Agreement exists between TI and Oldfield Club.

17. The Transfer Agreement required TI to, among other things, turn over a first-class golf and country club to Oldfield Club.

18. TI turned over the golf and country club to Oldfield Club in or about December 2015.

19. Before turnover, TI, Galbreath, and John Doe Directors controlled all aspects of Oldfield Club, including the physical facilities and financial matters.

20. Before turnover, TI, Galbreath, and John Doe Directors each owed a fiduciary duty to Oldfield Club and its members. That duty included putting the interests of Oldfield Club and its members ahead of the interests of TI, Galbreath, and John Doe Directors.

21. TI, Galbreath, and John Doe Directors turned over the golf and country club with a number of deficiencies. Those issues include, but are not limited to:

   A. Certain physical conditions of the Club facilities in need of immediate repair and/or replacement.

B. Failure of TI to turn over all of the required property, including the parcel known as the Greeters Store.

C. A history of TI, Galbreath, and John Doe Directors managing the Club in a way that best served TI, rather than Oldfield Club and its members. For example, for years TI limited the number of certain types of memberships to avoid reaching a number that might trigger turnover.

D. The artificial limiting of certain types of memberships caused, among other things, TI to turn over a club with fewer members than contemplated by the original transfer documents. As a result, the Club takes in significantly less annual revenue than contemplated by the Transfer Agreement.

E. TI, Galbreath, and John Doe Directors made or authorized numerous pre-turnover payments from Club funds for alterations, additions, and improvements that should have been paid for by TI.

F. TI, Galbreath, and John Doe Directors made or authorized numerous actions which served TI to the detriment of the Club and its members. This includes, but is not limited to, actions by Galbreath after turnover, while he served (and today serves) as a board member with a fiduciary duty to Oldfield Club, that harmed the Club and favored TI and Galbreath.

    G. TI and Galbreath secretly conspired with the then-general manager of Oldfield Club, Jamie Selby, and EGH to sell the Greeters Store property to the Selby and EGH. TI, Galbreath, Selby, and EGH did this while knowing that Oldfield Club had made a legal claim that that property should have been turned over to the Club, and while Oldfield Club was in negotiations with TI regarding that property.

    H. Today, Defendants claim that EGH owns the Greeters Store.

    I. Selby owns and controls EGH.

22. In addition, Oldfield Club has been sued in the Court of Common Pleas, Beaufort County, in the lawsuit *Marc Haas, Susan Haas, Rob Star, and Melissa Star v. TI Oldfield Operations, LLC; SF Operations, LLC; Oldfield Club; Oldfield Community Association; Oldfield Club Board of Directors, and John Does 1-10*, Civil Action 2016-CP-07-602 ("Haas Lawsuit").

    A. The lawsuit alleges claims against Oldfield Club for events that took place prior to the transfer date.

    B. The Transfer Agreement requires TI to, *inter alia*, indemnify, defend, hold harmless, and advance expenses to Oldfield Club and its directors for any and all claims and demands which arise from or relate to the ownership, operation or management of the Club facilities prior to the transfer date. This includes TI payment of attorneys' fees and disbursements made by Oldfield Club and its directors.

C. To date, TI has failed to indemnify, defend, hold harmless, advance expenses to, and pay attorneys' fees relating to the defense of Oldfield Club and its directors in the Haas Lawsuit.

23. Upon information and belief, Defendants have been divesting themselves of assets in an attempt to become judgement-proof for turnover issues. For reasons of equity and the principles articulated in South Carolina case law, any corporate veil(s) of Defendants should be pierced for claims and damages incurred in this action.

24. In addition, today Defendants continue to exert significant control over Oldfield Club, including, *inter alia*, over property at Oldfield, declarant rights at Oldfield, and memberships in Oldfield Club. Upon information and belief, Defendants may exercise that control in ways that damage Oldfield Club, to the benefit of Defendants. Oldfield Club accordingly requests a preliminary injunction prohibiting Defendants from exercising their control to the detriment of Oldfield Club while the legal matters in this lawsuit are resolved. Oldfield Club also seeks a declaratory judgment as to the legality of the scope of Defendants' control vis-à-vis their fiduciary duties to Oldfield Club.

## FIRST CAUSE OF ACTION

### (Breach of Fiduciary Duty—TI Defendants, Galbreath, and John Doe Directors )

25. The allegations above and below are incorporated into this cause of action as if set forth fully herein.

26. As the developer of Oldfield, TI owed, and owes, a fiduciary duty to Oldfield Club.

27. As a member of the board of directors of Oldfield Club, Galbreath and John Doe Directors each owed a fiduciary duty to the Club.

28. Galbreath continues to serve on the board of directors of Oldfield Club, and continues to owe a fiduciary duty to Oldfield Club.

29. TI, Galbreath, and John Doe Directors breached their fiduciary duties to Oldfield Club, including by:

   A. Turning over facilities that were not consistent with a first class golf and country club, and were in need of immediate repair;

   B. Improperly handling the finances of the Club before turnover;

   C. Deliberately manipulating the membership levels of Oldfield Club to favor TI and disfavor Oldfield Club;

   D. Failing to pay the appropriate subsidies required from TI before turnover;

   E. Conspiring with and selling the Greeters Store property to Selby and

    EGH;

  F. Putting the interests of TI over the interests of Oldfield Club, to the detriment of Oldfield Club.

30. As a result of Defendants' breaches of fiduciary duty, Oldfield Club has been damaged, including by:

  A. Turnover of facilities that were not consistent with a first class golf and country club, and that were in need of immediate repair;

  B. Turnover of insufficient and improperly handled finances;

  C. Artificially low membership numbers and accompanying revenues;

  D. Payment of amounts that should have been subsidized by TI;

  E. Loss of the Greeters Store property;

  F. Necessity of termination of Oldfield Club's general manager, and the expense of finding, training, and entering into a contract for a new general manager on an expedited basis;

  G. Payment of expenses and fees related to the Haas Lawsuit, when TI is contractually required to pay those expenses and fees and has without cause failed to do so.

## SECOND CAUSE(S) OF ACTION

### (Negligence and Negligent Misrepresentation—All Defendants)

31. The allegations above and below are incorporated into this cause of action as if set forth fully herein.

32. Defendants each owed duties to Oldfield Club, as described above. These duties included, *inter alia*, common law duties to deal fairly with Oldfield Club and its members because Defendants were Oldfield Club's sponsors, managers, persons, directors, employees and/or agents upon which the Club and its members relied for proper administration. Those duties prohibited Defendants from acting in a manner which would harm Oldfield Club and its members.

33. Defendants breached those duties to Oldfield Club, as described above. This includes, *inter alia*, Defendants, through their acts and omissions, making numerous false representations to Oldfield Club in their dealings with the Oldfield Club, including but not limited to the management and funding of the Club during the control period, and the information withheld regarding the Greeters Store. Oldfield Club and its members justifiably relied on the inaccurate information provided to them throughout the years by the Defendants in deciding to purchase their homes and memberships in the Oldfield community, and because of those false representations, Oldfield Club and its members have been damaged.

34. As a proximate cause of the breaches, Oldfield Club has been damaged, as described above. This includes, as a direct result of Defendants' negligence and negligent misrepresentations, damages to Oldfield Club and its members in the form of significantly increased additional assessments, investigation costs to determine the nature and extent of the negligence, wrongful actions of the Defendants, loss of the Greeters Store, extensive shortfalls in accounts, and considerable attorneys' fees and costs.

## THIRD CAUSE OF ACTION
### (Breach of Contract—TI Defendants)

35. The allegations above and below are incorporated into this cause of action as if set forth fully herein.

36. One or more binding contracts existed between the parties, including the Transfer Agreement.

37. The TI defendants breached the contract(s) or failed to perform the contract(s), including by:

    A. Turning over facilities that were not consistent with a first class golf and country club, and were in need of immediate repair;

    B. Improperly handling the finances of the Club before turnover;

    C. Deliberately manipulating the membership levels of Oldfield Club to favor TI and disfavor Oldfield Club;

D. Failing to pay the appropriate subsidy required from TI before turnover;

E. Conspiring and selling the Greeters Store property to Selby and EGH;

F. Putting the interests of TI over the interests of Oldfield Club, to the detriment of Oldfield Club.

G. Failing to indemnify Oldfield Club for the Haas Lawsuit.

38. As a result of the breach, Oldfield Club has been damaged, as described above.

### FOURTH CAUSE OF ACTION

### (Tortious Interference with Contractual Relations—TI Defendants and Galbreath)

39. The allegations above and below are incorporated into this cause of action as if set forth fully herein.

40. An employment contract existed between Oldfield Club and its former general manager, Selby.

41. TI defendants and Galbreath were aware of the contract between Oldfield Club and Selby.

42. TI defendants and Galbreath intentionally procured Selby to breach the employment contract by secretly negotiating with Selby and selling the Greeters Store to Selby and EGH.

43. No legal or factual justification exists for TI defendants' and Galbreath's

actions.

44. Galbreath participated in the secret negotiations and sale while serving as a member of Oldfield Club's board of directors.

45. TI used information obtained by Galbreath in confidence as a member of Oldfield Club's board of directors.

46. As a result, Oldfield Club has been damaged, including by the loss of the Greeters Store property, termination of its general manager, expenses of hiring and training a new general manager on an expedited basis, and defense of a new lawsuit filed by Selby against Oldfield Club in the Court of Common Pleas, Beaufort County: *Jamie D. Selby v. Oldfield Club*, Civil Action 2016-CP-07-2436.

## FIFTH CAUSE OF ACTION

**(Civil Conspiracy and Request for Declaratory Relief—All Defendants)**

47. The allegations above and below are incorporated into this cause of action as if set forth fully herein.

48. Oldfield Club had a reasonable belief that the Greeters Store was to be turned over to the Club at the end of the control period as part of the common properties because of Defendants' actions in marketing property to the members and because a portion of residents' assessments were used for the upkeep of the store while it was owned and operated by TI. In the alternative, Oldfield Club had the reasonable expectation that it would have

the right of first refusal should the Greeters Store ever be marketed and sold by TI. These beliefs constitute prospective contractual relations to which Oldfield Club reasonably had a right.

49. As previously alleged, Defendants covertly conspired for the purpose of depriving the Oldfield Club of the opportunity to gain ownership of the Greeters Store. This conspiracy took place in part while Defendants were negotiating with Oldfield Club regarding turnover matters, including ownership of the Greeters Store.

50. As the conspiracy unfolded and after an investigation by the Club, it became clear that the transfer of the Greeters Store was fashioned and designed to foreclose any negotiations or possible settlements regarding the Greeters Store.

51. As the sale of the Greeters Store foreclosed the possibility of a negotiated settlement on the Greeters Store issue and because it occurred solely as a result of the actions of Defendants, and not by reason of any actions of the Club, Oldfield Club is entitled to the following declarations by this Court:

   A. That the Greeters Store, under principles of equity and law, should be considered common property. As such it rightfully belongs to the Club and/or Oldfield Community Association ("Association") and their members;

   B. That Defendants violated the terms and agreements for a negotiated

process to settle all potential claims, one of which was the future control of the Greeters Store, and as a result Oldfield Club has been damaged;

C. That Oldfield Club is entitled to attorneys' fees and costs in that Defendants did not act in good faith in the settlement negotiations and foreclosed the same, prematurely ending any possible agreement.

D. That the Greeters Store is a common property of Oldfield Club and/or the Association based on representations made by TI defendants, Galbreath, and John Doe Directors during the control period. Specifically, representations were made to the Club and members in the form of assessments for Greeters Store upkeep, maintenance, and taxes; the representation to owners in Oldfield that the store would be a part of any negotiated transfer when the declarant control turnover ended; and representations as to how the property would be ultimately transferred.

52. In addition, Oldfield Club has suffered other special damages in attempting to unwind the wrongful sale of the Greeters Store. Those special damages include attorneys' fees and various costs associated with the unwinding of the store transaction, the costs of relocating services previously housed in the store, the loss of good will between Oldfield Club and its former long-time employee and between Oldfield Club and its developer, the costs to recruit

and hire a replacement for Selby, and other costs to be proven at trial.

## SIXTH CAUSE OF ACTION

### (Quantum Meruit—All Defendants)

53. The allegations above and below are incorporated into this cause of action as if set forth fully herein.

54. A benefit was conferred upon the Defendants by Oldfield Club, in the form of confidential inside information about the Greeters Store, the real estate market and history at Oldfield, and future potential sales at Oldfield, as well as access to the Oldfield community.

55. Defendants realized that benefit in the form of sale of, and profit from, the Greeters Store, based on the information described above.

56. It would be unjust for Defendants to retain those benefits without paying their value.

## SEVENTH CAUSE OF ACTION

### (Preliminary Injunction and Declaratory Judgment—All Defendants)

57. The allegations above and below are incorporated into this cause of action as if set forth fully herein.

58. Defendants continue to exert significant control over Oldfield Club, including, *inter alia*, over property at Oldfield, declarant rights at Oldfield, and memberships in Oldfield Club.

59. Defendants continue to owe a fiduciary duty to Oldfield Club and its members.

60. Upon information and belief, Defendants may exercise its control in ways that damage Oldfield Club, to the benefit of Defendants. This includes, but is not limited to, sale of the declarant rights and annexation of property into Oldfield.

61. Oldfield Club accordingly requests a preliminary injunction prohibiting Defendants from exercising their control over matters at Oldfield to the detriment of Oldfield Club until the legal matters in this lawsuit are resolved.

62. Oldfield Club also seeks a declaratory judgment as to the legality of the scope of Defendants' control vis-à-vis Defendants' fiduciary duties to Oldfield Club and its members.

63. Oldfield Club further seeks a declaratory judgment that the sale of the Greeters Store was improper under law and equity, and should be voided or otherwise unwound.

WHEREFORE, Plaintiff requests that judgment be entered against each Defendant on all causes of action, and that Plaintiff be awarded:

A. Actual damages;
B. Consequential damages;
C. Special damages;

D. Punitive damages;

E. A preliminary injunction as set forth above;

F. A declaratory judgment as set forth above;

G. A full accounting of pre-turnover and post-turnover finances, including allocations, expenditures, payments, and transfers by and among Defendants;

H. Equitable relief as requested above, including piercing of the corporate veil(s) of defendants;

I. A constructive trust, to the extent permitted by law;

J. Pre-judgment and post-judgment interest;

K. Attorneys' fees and costs; and

L. Such other and further relief as the Court and jury deem just and appropriate.

Plaintiff requests a trial by jury.

Respectfully submitted,

FORD WALLACE THOMSON LLC

By: <u>s/ Ian Ford</u>
Ian S. Ford
   Ian.Ford@FordWallace.com
Neil D. Thomson
   Neil.Thomson@FordWallace.com
715 King Street, Charleston, SC  29403
(843) 277-2011
<u>www.FordWallace.com</u>

*Attorneys for plaintiff Oldfield Club*

Charleston, South Carolina

March 1, 2017